Filed 1/2/14  Marriage of Saadian CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re Marriage of KATHRIN and GEORGE SAADIAN. | B227708 |
| | (Los Angeles County Super. Ct. No. BD479011) |
| KATHRIN SAADIAN, Respondent, v. GEORGE SAADIAN, Appellant. | |

Appeal from orders of the Superior Court of Los Angeles.  David S. Cunningham III, Judge.  Affirmed.

The Samoska Law Firm, William M. Samoska; Law Offices of Bruce Altschuld and Bruce Altschuld for Appellant Landmark West Enterprises, LLC.

Turner, Aubert & Friedmen, Steven Morris; R. Michael Collum for Respondent Kathrin Saadian.

_____

This appeal arises from a September 23, 2010 order of the family law department of the Los Angeles Superior Court (the Order) in a dissolution proceeding between petitioner Kathrin Saadian (Kathrin) and respondent George Saadian (George), along with a number of entities joined as parties, including Landmark West Enterprises, LLC (Landmark West); Shenanwood Development, Inc. (Shenanwood); Branmark Trust; and David Pasternak, temporary trustee of the Branmark Trust (Pasternak).[1] The challenged portions of the Order awarded substantial attorney fees and costs to be paid to Kathrin's attorneys.

## Statement of Facts

George and Kathrin married in August 1991. They have two sons, born in June 1993 and May 1999. The parties separated and Kathrin filed for dissolution in January 2008.

### The September 23, 2010 Order

After seven days of hearings on issues raised by five pending motions concerning support and fees, the trial court filed the Order, supported by factual findings. It found (in par. 7) that during his marriage to Kathrin, George had "formed a labyrinth of companies and trusts and exercised dominion and control over them, including distributions of monies for those entities for his personal use." It found that during the marriage George had controlled a number of entities, including Landmark West, Shenanwood, and the Branmark Trust (until Pasternak's March 2010 appointment as temporary trustee); that shortly before Kathrin's January 2008 dissolution petition, these entities had a net worth exceeding $23 million; and that George's available monthly cash flow exceeded $62,400. The court went on to find (in par. 12) that Shenanwood—not

---

[1] We refer to Kathrin and George by their given names for the sake of clarity. (*Marriage of Murray* (2002) 101 Cal.App.4th 581, 584, fn. 1.)

Landmark West—was entitled to specified proceeds from sales of a condominium project, identified as "the Frozen Funds at Mara Escrow Company."[2]

Based on these and other findings, the court rendered detailed orders for payment, of certain support arrearages to Kathrin, and for payment of pendente lite fees and costs to Kathrin's attorneys. Paragraph 4 of the Order specified that support arrearages of $75,142 "shall be paid from the 'frozen account' on deposit at Mara Escrow Company, . . . reflecting the net sales proceeds from [specified property] in the amount of $568,668.79," and ordered Mara Escrow to immediately remit that amount to Kathrin. Paragraph 6 of the Order required George to pay Kathrin's attorneys $1 million for fees and costs, without prejudice to future requests. And in paragraph 7, the court ordered that $493,526.79 of that $1 million payment would be paid from the balance of the frozen escrow account.

The Order was expressly intended by the court to maintain the status quo between the parties, leaving for future determination the appropriate division and characterization of the involved entities and assets as community, quasi-community, or separate property.

**Appeals from the Order**

There were four timely notices of appeal from the Order (or specified portions of it): on behalf of George; on behalf of Shenanwood; on behalf of Pasternak, as temporary trustee of Branmark Trust; and on behalf of Landmark West.[3] Landmark West's notice of appeal limits its appeal to paragraphs 7 and 12 of the Order's findings, and paragraphs 4 and 7 of the court's Order.

---

[2] On March 4, 2009, the court designated the proceedings as a complex case under Family Code section 2032 based on the parties' stipulation.

[3] Because Landmark West's notice of appeal is not included in the clerk's transcript, we have supplemented the record from this court's files. The notice of appeal was filed on behalf of Landmark West on November 18, 2010, by the same attorneys that had filed Pasternak's October 28, 2010 appeal on behalf of the Branmark Trust.

3

**The settlement deal memorandum**

On February 3, 2012, while this appeal was pending, Kathrin and George entered into a five-page "Deal Memorandum In Respect To Resolving All Disputes, Known Or Unknown, Between George Saadian and Kathrin Saadian." The memorandum recites the parties' intentions that their agreement would result in release of all claims by and among the parties and "their entities"; that the parties would "be legally bound by this agreement and that it be enforceable on its terms pursuant to CCP Sec. 664.6" (although further "boilerplate and technical language" would be added to a final document); and that any dispute arising under the deal memorandum or the final settlement "shall be submitted to binding arbitration" before a specified retired judge of the superior court.

Following their deal memorandum, the parties were unable to agree on the meaning of the memorandum's term "their entities," however. Although the deal memorandum provided that George would quitclaim (or would cause Landmark West to quitclaim) specified properties to Kathrin, George contended that because of his April 2010 suspension as a trustee of Branmark Trust (which owned 85 percent of Landmark West), his signature on the deal memorandum could not have bound Landmark West to the settlement's terms and could not bind it to transfer any of its share of the properties.

On March 21, 2012, the parties submitted their dispute over the deal memorandum's meaning to binding arbitration before the specified retired judge, the Honorable Robert A. Schneider. Judge Schneider's April 4, 2012 ruling holds that the agreement requires George to execute, "or, in the case of properties owned by Landmark West Enterprises, LLC, to cause Landmark West Enterprises, LLC to execute" quitclaim deeds conveying the listed properties to Kathrin. The arbitrator's ruling was expressly "without prejudice to the partners (including individual members of partner entities) of Landmark West Enterprises, LLC to raise any objections that they wish to raise in Probate Court or any other court." The record contains no indication of any objection to that ruling by Landmark West or any partner or member of a partner entity of Landmark West.

4

**Requests for extension of time to file opening brief**

On February 17, 2012, George, Shenanwood, Landmark West, Pasternak, and Branmark Trust filed a request in this court for a 60-day extension of time to file their opening brief, unopposed by Kathrin. In support of the request they advised the court of George and Kathrin's February 3, 2012 deal memorandum for a "global settlement of all outstanding issues," which they anticipated "will result in a motion to dismiss this appeal"—but that additional time was required "to be certain that the global settlement of all outstanding issues will indeed result in a dismissal of this appeal." The extension was granted.

On April 17, 2012, George, Landmark West, Pasternak, and Branmark Trust filed requests in this court for a "third unopposed 60-day extension of time to file their opening brief." Citing their previous extension request that had anticipated a dismissal of the appeal, they sought the additional extension "to obtain required approvals of parties and courts concerned," due to one disputed provision of the agreement. They attached copies of the February 3, 2012 deal memorandum and Judge Schneider's April 4, 2012 arbitration ruling order interpreting the deal memorandum's disputed term. This court granted 60-day extensions to file appellants' opening briefs, to June 18, 2012.

**Stipulated probate court and family law court orders**

In May 2012, the parties and their attorneys executed a Stipulation For Entry Of Judgment, seeking the probate court's approval of the settlement in three cases pending before it (case nos. SP007767, SP008227, and SP008228), and entry of judgment in the family law case.[4] The stipulation provides (among many other things) that Kathrin is to receive title to the seven properties listed in the deal memorandum. It provides that (subject to the probate court's discretion), George, acting on behalf of Shenanwood,

---

[4] According to George, case no. SP007767 arose from a March 2009 petition he filed as trustee of the Branmark Trust, seeking characterization of properties held by Landmark West as community or separate property assets. In that case, and in the other two probate cases (involving the children's trusts) the probate court suspended George as trustee and appointed David Pasternak as temporary trustee of the Branmark Trust and the children's trusts.

would quitclaim two of those properties to Kathrin; that Pasternak, acting on behalf of the Branmark Trust, would quitclaim one of those properties to Kathrin; and that Pasternak, acting on behalf of Landmark West, would quitclaim the remaining four of those properties to Kathrin.[5] Upon the family law court's order based on the stipulation (to be obtained following the probate court's approval), the stipulation provides that the probate court would cause Pasternak to make the ordered distributions to Kathrin, and would then cause Pasternak's discharge as temporary trustee of the Branmark Trust, and George's reinstatement as trustee.

On June 8, 2012, the probate court entered an order approving "with conditions" the parties' stipulation for entry of judgment based on their settlement agreement. Pursuant to the parties' stipulation, the probate court order provides that Kathrin will receive title to seven listed properties. It requires Pasternak, as "Managing Member" of Landmark and of an entity known as Branmark Group, to quitclaim five of those properties to Kathrin "in their entirety." And it requires George, acting on behalf of Shenanwood, to quitclaim the remaining two of those properties to Kathrin.

The probate court order provides that upon the family law court's approval of the stipulation and the ordered distributions to Kathrin by Pasternak, it will cause Pasternak's discharge as temporary trustee of the Branmark Trust and George's reinstatement as trustee. The probate court order was approved as to form by counsel for Kathrin, George, and Pasternak (as well as by the guardian ad litem for the parties' minor child), and was entered by the probate court (Lawrence Cho, Judge) on June 8, 2012. The order was to become effective immediately upon the entry of judgment in the family law court based on the parties' stipulation.

On June 11, 2012, the family law department of the superior court entered judgment in accordance with the parties' Stipulation For Entry Of Judgment.

---

[5] Pasternak was then temporary trustee of the Branmark Trust, which owned an 85 percent interest in Landmark West, and of the children's trusts, which together owned a 15 percent interest in Landmark West.

**Appellants' opening brief**

On July 23, 2012, attorney William M. Samoska substituted in this court as attorney for Shenanwood, Branmark Trust, and Landmark West. (He also moved to vacate this court's July 12, 2012 dismissal of Shenanwood's appeal for failure to timely file an opening brief.) On August 8, 2012, attorney Samoska filed Appellants' Consolidated Opening Brief, its cover page identifying the appellants as Shenanwood and Landmark West. Although the brief's cover identifies neither George nor Branmark Trust as parties to the brief, its text identifies George as a party, with whom Branmark Trust, Shenanwood, and Landmark West, "have joined in this consolidated opening brief"—all represented by attorney Samoska.

In 27 pages of the 70-page opening brief the appellants argue five issues: that the trial court erred by relying on evidence from Kathrin's forensic experts about the funds available to pay her attorneys' fees; that Landmark West did not cause or incur much of the awarded fees; that the court wrongly applied the decision in *Marriage of Dick* (1993) 15 Cal.App.4th 144; that the court abused its discretion by using assets of "joined entities" to pay attorneys' fees; and that the court erred in finding that Shenanwood, rather than Landmark West, owned the funds in the Mara Escrow account.[6]

**Kathrin's motion to dismiss the appeals, and George's opposition to dismissal**

On October 25, 2012, Kathrin moved to dismiss the appeal as moot, due to the parties' settlement of all disputes and release of all claims.

On November 9, 2012, attorney Samoska filed opposition to the motion on behalf of George (but not on behalf of Landmark West or the other joined parties).[7] George argued that the settlement agreement does not require him to dismiss Landmark West's

---

[6] The opening brief's certification of compliance with California Rules of Court, rule 8.204(c)(1) states that it contains "not more than 15,000 words," and that a motion "is filed concurrently" to exceed the rule's 14,000 word limit. The docket reflects no such motion.

[7] George's Opposition to the Motion To Dismiss was filed by attorney Samoska, who by then also represented Landmark West, the Branmark Trust, and the children's trusts.

7

appeal from the September 23, 2010 order, nor could it, because Landmark is not bound by the settlement. George contended that the settlement agreement required him to quitclaim to Kathrin only his own interests in the specified properties, but not the shares held by Landmark West, because when the settlement agreement was signed, Pasternak controlled Landmark West as trustee of Branmark Trust (which owned 85 percent of Landmark West) and as trustee of the children's trusts (which together owned 15 percent of Landmark West). According to George, Landmark West therefore retains an interest in this appeal despite George and Kathrin's settlement of all disputes.

George concedes in the concluding paragraphs of his nine-page opposition to the motion to dismiss, however, that the settlement requires both George and Shenanwood to withdraw their appeals.[8]

Kathrin's November 14, 2012 reply to George's opposition to the motion to dismiss notes that while George admitted he has no standing in this appeal, only he—and neither Landmark West nor any other appellant—opposed the dismissal motion. Kathrin's reply also cited the inconsistency of George's contention that he did not and could not bind Landmark West to the settlement, with his earlier representations to this court that he anticipated the settlement agreement would result in a dismissal of this appeal on behalf of all parties. If George never intended the settlement to bind Landmark West, he could not also have anticipated (as he and Landmark West both represented) that the settlement would result in dismissal of the appeal by all parties.

This court denied the motion to dismiss the appeal on February 20, 2013. (On June 6, 2013, this court dismissed George's appeal for his failure to file an opening brief.)

**Respondent's brief and appellant's reply brief**

Respondent's brief was filed May 15, 2013. On September 4, 2013, attorney Samoska filed Appellant's Reply Brief on behalf of Landmark West alone. It chastises Kathrin for her motion to dismiss; it reaffirms that dismissal of George's and

---

[8] Although his opposition represents that "Appellants have filed concurrently herewith a stipulation to withdraw the appeal as to George and Shenanwood," neither this court's docket nor the superior court docket reflect any such stipulation or withdrawal.

8

Shenanwood's appeals is required; and it again represents that George and Shenanwood filed a stipulation to withdraw their appeals "concurrently herewith"—again without any such filing appearing in this court's records. The last 8 pages of the 35-page reply brief repeat the opening brief's arguments on the merits.

The appellants reflected by this court's docket are Landmark West, Branmark Trust, and Shenanwood. George (who admittedly controls Shenanwood, and who has been restored as trustee of Branmark Trust, the owner of an 85 percent interest in Landmark West) has represented to this court that Branmark Trust and Shenanwood must be dismissed as parties to the appeal. As of the time briefing was completed, neither Branmark Trust nor Shenanwood (who were represented in the opening brief by George's attorney) had advised this court to the contrary. We therefore will dismiss the appeals of Branmark Trust and Shenanwood, leaving Landmark West as the sole appellant.

## Discussion

### 1. Standing and Standard of Review

A direct appeal lies from interim orders granting support and attorney fees, which direct the payment of money or the performance of an act by or against an appellant. (*Marriage of Skelley* (1976) 18 Cal.3d 365, 368-369; *Alicia R. v. Timothy M.* (1994) 29 Cal.App.4th 1232, 1234 [pendente lite order for child support and attorney fees].)

When an action is within a trial court's subject matter jurisdiction, its decision will be affirmed unless there has been a prejudicial abuse of the court's discretion. On appeal the court will interfere only if no judge reasonably could have reached the challenged result under all the evidence, viewed most favorably in support of the trial court's action. (*Smith v. Smith* (1969) 1 Cal.App.3d 952, 958; *Marriage of Laursen & Fogarty* (1988) 197 Cal.App.3d 1082, 1086-1087.) It is the appellant's burden to affirmatively demonstrate error in the challenged order, and to demonstrate the error's prejudicial impact on the appellant. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

The only cognizable issues raised by Landmark West's appeal arise from the portions of the Order identified in its notice of appeal, "regarding the amount of the

award of [Kathrin's] attorney fees and the source from which the court ordered them paid"—specifically, paragraphs 7 and 12 of the trial court's findings, and paragraphs 4 and 7 of its order—and only to the extent that Landmark West has an interest in those funds. (Code Civ. Proc., § 902; *County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 [only parties aggrieved by the judgment have standing to appeal]; *Gonzales v. R.J. Novick Construction Co.* (1978) 20 Cal.3d 798, 805-806 [issues on appeal from severable judgment are limited by appellant's notice of appeal].)

We conclude in this appeal that the record justifies the trial court's conclusion that Landmark West owns no interest in the funds ordered to be paid from the Mara Escrow Company account, and therefore that the portions of the order affecting Landmark West reflect no abuse of the trial court's discretion or prejudice to Landmark West.

## 2. Landmark West's appeal fails to demonstrate that the Order abused the trial court's discretion.

The fundamental contention in Landmark West's appeal is that the trial court abused its discretion by ordering payment of fees to Kathrin and her attorneys from funds held by Mara Escrow Company. The use of those funds, its appeal contends, rests on an erroneous finding that those funds belong to Shenanwood (an entity that George admittedly owns and controls), rather than to Landmark West, which George contends he does not own or control. Landmark West contends also that use of its funds to pay Kathrin's attorney fees was error because Landmark West did not cause or incur much of those fees, and that these errors came about because the trial court wrongly applied the decision in *Marriage of Dick*, *supra*, 15 Cal.App.4th 144, to justify its reliance on evidence provided by Kathrin's forensic experts about George's financial resources and control of Landmark West.[9]

---

[9] Appellants' Opening Brief (purportedly filed on behalf of George, as well as Landmark West and Shenanwood) identifies two overlapping issues involving Landmark West's interests: that the trial court abused its discretion by using Landmark West's funds for its attorney fee award; and that Landmark West has priority over Shenanwood to the frozen escrow funds.

10

These issues are governed by the familiar rule affording every presumption in favor of determinations supported by substantial evidence. "On appeal, when the evidence is contradictory, conflicting interpretations are presented thereby, or conflicting inferences may be drawn therefrom, that which favors the judgment must be accepted as true, and that which is unfavorable must be discarded as not having had sufficient verity for acceptance by the trial court." (*Ross v. Lawrence* (1963) 219 Cal.App.2d 229, 232; *Estate of Teel* (1944) 25 Cal.2d 520, 527 ["All of the evidence most favorable to the respondent must be accepted as true, and that unfavorable discarded as not having sufficient verity to be accepted by the trier of fact."].)

### a. Landmark West has standing to appeal from the Order only to the extent it has an interest in the awarded funds.

In a determination that is fully supported by evidence in the record, the trial court found that Landmark West lacked any interest in the funds in the Mara Escrow account. For that reason alone, Landmark West's appeal from the Order's use of those funds flounders. Landmark West's standing to challenge the trial court's fee award derives wholly from its claim of ownership of the funds in the frozen escrow account from which the award is to be paid. Because Landmark West has been found upon substantial evidence to have no interest in those funds, it is not aggrieved by the Order. (Code Civ. Proc., § 902; *County of Alameda v. Carleson*, *supra*, 5 Cal.3d at p. 737 [only parties aggrieved by the judgment have standing to appeal].)

The record fully supports the trial court's conclusion that Landmark West was not entitled to the funds frozen in the Mara Escrow account.

### b. Landmark West's appeal fails to demonstrate error in the trial court's determination that it was not entitled to any portion of the funds ordered to be paid from the escrow account.

Paragraph 4 of the challenged Order awards payment of $75,142 in arrearages in support for Kathrin "from the 'frozen account' on deposit at Mara Escrow Company, . . . reflecting the net sales proceeds from [the Shenandoah Street condominium sales] in the

11

amount of $568,668.79." Paragraph 7 of the Order awards payment of $493,526.79 from the frozen Mara Escrow account to Kathrin's attorneys, out of a total award of $1 million.

In support of these orders, the trial court found that if Landmark West had any interest in the loan transaction between it and Shenanwood for Shenanwood's acquisition of the property for the Shenandoah Street condominium project, "Landmark West's interests, if any, were not properly secured and perfected." The trial court's determination that Shenanwood—admittedly wholly owned and controlled by George— is entitled to the proceeds of the Shenandoah Street condominium sales frozen in the Mara Escrow account, and therefore that Landmark has no interest in them, is supported by substantial evidence.

The initial order freezing the funds, filed September 17, 2009 (Jill Robbins, Judge Pro Tem), required Mara Escrow Company to hold specified condominium sales proceeds in its account pending further court order, and prohibited the parties from interfering in any manner with the escrow process.[10] On November 16, 2009, the court revised its freezing order to find that the escrow funds resulting from the sale of one of the condominium units then totaled $568,668.79, and to extend the restraining orders with respect to those funds.

Landmark West (and George) contend that Landmark West is neither owned nor controlled by George; that Landmark West, not Shenanwood (or George), is contractually entitled to the frozen escrow funds; and therefore that the court abused its discretion by ordering those funds to be used to pay the fees of Kathrin's attorneys. However, those contentions are dispelled by evidence that: George had exercised substantial control over both Shenanwood and Landmark West in the Shenandoah Street condominium project and other circumstances; by evidence that Landmark West records indicate the absence of any bona fide debt owed to Landmark West by Shenanwood; by the court's conclusions

---

[10] Accusations that George tried to circumvent this order by creating frivolous litigation between Landmark West and Shenanwood over the funds, without informing the family law court, led to his suspension as trustee of the Branmark Trust and Pasternak's appointment as temporary trustee.

12

that George "was not credible" regarding his cash flow and management of assets acquired and under his control during the marriage; by the finding that George had used "a labyrinth of companies and trusts" to obtain funds for his personal use while concealing their sources; and that during the marriage he had controlled not just Shenanwood, but also Landmark West and the Branmark Trust, which owned 85 percent of Landmark West.

It was in this respect that the court found this case to be similar to the circumstances in *Marriage of Dick*, *supra*, 15 Cal.App.4th 144, a conclusion that Landmark West contends is unjustified. In *Marriage of Dick*, the trial court had found, upon substantial evidence, that the husband had the ability to pay the amounts ordered for temporary support and attorney fees, despite his denials. "It is clear that the trial court utterly disbelieved him, and its assessment of husband's credibility is binding on this court." (*Id.* at p. 160.) The cited supporting evidence included the husband's apparent control of entities in which he denied any interest, and his denials of ownership of assets that he elsewhere treated as his. (*Id.* at pp. 162-165.) George distinguishes *Marriage of Dick* on the ground that there the evidence suggested illegality and fraud by the husband. But the trial court in this case was entitled to disbelieve George, and to find that his use of various entities to hold his assets, with or without fraud or illegality, did not deprive him of the resources or ability to cause payment of the funds awarded.

The trial court's conclusions in this case are supported by evidence that George formed Shenanwood in 2005 in order to develop the Shenandoah Street property, which was then held in the name of Landmark West. According to George, he purchased the property from Landmark with a bank loan, along with a loan of about $4.1 million from Landmark West secured by the property, and that Shenanwood eventually sold or leased (at a loss) all of the condominium units it had built. If it were true that Shenanwood had a legitimate outstanding debt of $4.1 million to Landmark West on Shenanwood's note, (and if Landmark West was not an entity controlled by George), then Landmark West, not Shenanwood, would be entitled to the proceeds of the condominium sales—the funds

13

that the Order required to be paid to Kathrin and her attorneys. However, the trial court, based on the evidence found to the contrary.

In connection with its orders freezing the escrow funds, however, the trial court had before it ample evidence indicating that the transaction between Landmark West and Shenanwood was not an arms-length sale between independent entities. Evidence and previous court findings indicated that in purchasing the properties from Landmark, Shenanwood had executed two different promissory notes for the same property, dated two days apart, with different terms; that the deed had not been executed at the same time as the purported note; and that by the time the deed was actually executed, it had been clear that the condominium project could not be a financial success, based on the parties' own figures. The evidence showed, in addition, that in mid-2007 (about 6 months before Kathrin filed her dissolution petition) Landmark West had issued checks to George totaling $250,000.[11] And as of September 30, 2007, George prepared a consolidated financial statement claiming that his net worth—combined with Landmark West and other entities—was over $29 million, his consolidated financial statement dated August 30, 2006 showed a net worth of more than $23 million, and his consolidated financial statement dated March 19, 2008 showed a net worth of more than $21 million. George signed the purchase agreement and escrow instructions for the Shenandoah property on behalf of both the seller and the purchaser, and the promissory note on behalf of both the borrower and lender.

Despite the purported January 31, 2007 sale of the Shenandoah Street property by Landmark West to Shenanwood, George's financial statement dated August 30, 2008 identifies the Shenandoah Street property as being owned "100%" by Landmark West. Moreover, Landmark West's general ledger as of December 31, 2007 showed the balance owed by Shenanwood on the note as zero. The note was not recorded.

Based on these and other facts, Kathrin's expert witness testified that George had created a sham loan to Landmark West in order to shift condominium sales proceeds

---

[11] Kathrin testified that George had initially moved out of the family residence in August 2007, but that she let him return in mid-September 2007.

14

from Shenanwood to Landmark West, both of which George controlled, and that the proceeds from the condominium sales—the funds in the Mara Escrow account—"should belong to the owner of the property, Shenanwood, and not the fictitious lender, [Landmark West]."[12]  The Order concludes that "Landmark West's interests [in the proceeds of the Shenandoah Street condominium project], if any, were not properly secured and perfected."

It is true, as George argues at length, that he offered evidence and explanations for many of these circumstances, which, if credited, might have justified conclusions contrary to those reached by the trial court.[13]  However, this court is bound to credit the evidence that supports the trial court's order, and to disregard that which does not.  (*Ross v. Lawrence*, *supra*, 219 Cal.App.2d at p. 231; *Estate of Teel*, *supra*, 25 Cal.2d at p. 524.)

---

[12] On May 19, 2010 (about 6 weeks after Kathrin had moved for payment of her attorneys from the frozen escrow funds)—Landmark West's attorney filed a UCC-1 Financing Statement on Landmark West's behalf, for Shenanwood's rights, interests, and profits from the Shenandoah Street property.  As the opening brief points out in a footnote, that put third parties on notice of Landmark West's claim to a security interest in that collateral; however the opening brief provides no authority for its apparent claim that the filing has any impact on this case.  (*Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384 [court need not consider argument for which no authority is furnished].)

[13] The appellants' opening brief and Landmark West's reply brief argue the existence of many facts and propositions for which they provide no record citations (or for which record citations are to supposed facts stated in their trial court points and authorities).  These purported facts, for the most part, we disregard.  (Cal. Rules of Court, rule 8.204(a)(1)(C); *Dominguez v. Financial Indem. Co.* (2010) 183 Cal.App.4th 388, 391.)  We also disregard the citations to exhibits for which no transcript volume or page is provided.  And because the briefs' citations to transcripts by date and page of daily trial transcripts (over a hundred such citations on more than 30 pages of the opening brief alone) provide this court with no clue as to the volume and page of the Reporter's Transcript on appeal, we disregard those references as well.

15

The trial court's determination that Landmark West is not entitled to the funds frozen in the Mara Escrow account is supported by substantial evidence.[14]

## Conclusion

Because Landmark West has no interest in the funds awarded by the trial court for the payment of attorney fees to Kathrin's attorneys, it lacks standing to challenge the trial court's determinations that George exercised control over Landmark West's affairs, that Landmark West did not cause or incur the ordered fees, that Landmark West was not an alter ego of George, or that the fee award was in any way improper or unjustified. The outcome of those challenges could not entitle Landmark West to the funds that the Order requires Mara Escrow to pay to Kathrin's attorneys.

---

[14] In a January 6, 2010 hearing, George's counsel went so far as to argue to the trial court that Landmark West's joinder as a party was unnecessary because the court could order George to take any required action, while making no claim that George could not control Landmark West. He argued, "Landmark West. It's an LLC owned 85 percent by the Branmark Trust, 15 percent by the children's trust[s]. If the court is inclined to join . . . the Branmark Trust, what's the need to join, also, Landmark West? . . ." "If the owners [of the Branmark Trust and Landmark West] are here, you can tell the owners what to do. . . . You don't have to have every entity that [George], for example, owns. If he's here, you have jurisdiction over him. You say, 'Mr. Saadian, here's what you're going to do with these properties.'"

16

## Disposition

The Order of September 23, 2010 is affirmed, without prejudice to the trial court's discretion to determine the extent to which any party to the underlying action has been prejudiced by the filing and maintenance of appeals in this matter by or on behalf of any party that knew or should have known that it lacked either reasonably arguable standing to maintain its appeal, or reasonably arguable grounds for appeal; and to order payment of reasonable fees and costs arising from such determination. Respondent is entitled to her costs on appeal.

NOT TO BE PUBLISHED.

CHANEY, J.

We concur:

ROTHSCHILD, Acting P. J.

MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.